N2GVINTC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

INTERNATIONAL INSTITUTE FOR
THE BRAIN, LTD.,

                   Plaintiff,

          v.                          23 Civ. 638 (JPO)

KATELYN NEWMAN,

                   Defendant.         Teleconference

------------------------------x
                                      New York, N.Y.
                                      February 16, 2023
                                      11:35 a.m.

Before:

                    HON. J. PAUL OETKEN,

                                      District Judge

                         APPEARANCES

PRYOR CASHMAN LLP
     Attorneys for Plaintiff
BY:  WILLIAM L. CHARRON
     JESSICA ROSEN

McCALLION & ASSOCIATES LLP
     Attorneys for Defendant
BY:  KENNETH F. McCALLION
     -and-
BRENNAN LAW FIRM PLLC
BY:  KERRY A. BRENNAN

N2GVINTC

1              (Teleconference)

2              (Case called)

3              THE DEPUTY CLERK:  Starting with the plaintiff,

4    counsel, please state your name for the record.

5              MR. CHARRON:  Good morning, your Honor.

6              William Charron and Jessica Rosen from Pryor Cashman,

7    for the plaintiff.

8              THE COURT:  Good morning.

9              And defense counsel?

10             MR. McCALLION:  Yes.  Kenneth McCallion and my

11   colleague Kerry Brennan for the defendant.

12             Good morning, your Honor.

13             THE COURT:  Good morning.

14             I scheduled this call after receiving the parties'

15   letters and the stipulation that you reached with respect to

16   the posting of certain photos that have been taken down, which

17   I guess mooted the hearing on requested preliminary injunctive

18   relief.

19             But I did want to have a call to address the parties'

20   respective positions in their letters from February 9th.

21             As I understand it, plaintiff wishes to commence

22   discovery as soon as possible and set a schedule on discovery.

23   Defendant, I think, opposes that and contemplates moving to

24   dismiss.

25             So let me hear from anyone who wants to speak,

N2GVINTC

1    starting with plaintiff, Mr. Charron.

2              MR. CHARRON:  Thank you, your Honor.

3              Yes, William Charron.

4              That captures it for us.

5              As we've laid out in our papers, there are some pretty

6    outrageous statements being made against our client.  The

7    images of the students have been used to further sensationalize

8    and promote our client.  Obviously, as I said in our letter, we

9    understand we can't get an injunction to stop the defendant

10   from speaking, but we have to do everything we can, as rapidly

11   as we can, to stop this, which means we have to litigate the

12   case as rapidly as possible.

13             THE COURT:  When you say "stop this," what is "this"?

14             MR. CHARRON:  The infringement of the photographs used

15   in connection with the defamation.  And I can be more

16   specific --

17             THE COURT:  They are no longer posted, right?

18             MR. CHARRON:  They were taken down on a voluntary

19   preliminary injunction is how I would call it.  But they -- I

20   believe they were all taken down as part of the stipulation,

21   the photographs.  The defamation has not stopped.

22             THE COURT:  The defamation -- I assume you know under

23   defamation law that statements made in the context of a court

24   proceeding are generally privileged.  So people put things in

25   the context of a lawsuit, and it's very hard to get a

N2GVINTC

1    defamation ruling based on that.  So aren't these things that

2    are all ancillary to statements made in the state court

3    lawsuit?

4              MR. CHARRON:  William Charron.

5              No, they are not, your Honor.

6              So we did amend, which I'll address in a moment, to

7    capture what's going on in the state lawsuit as well.  But

8    before that, we had a defamation claim based upon social media

9    activity by the defendant.  That's the heart of this.  And that

10   did not stop.

11             As recently as February 9th, the defendant posted a

12   YouTube where she was talking about there's so much -- I'm

13   quoting now:  There is so much evidence, that I do not see how

14   anyone could look the other way.  This is all corruption and

15   needs to come to a stop.  I can't write it all here, but you

16   follow my Instagram.

17             And she gives her Instagram tag line.

18             So the social media is the huge problem here.

19             I'll note that, as we said, the press picked up on

20   this social media -- I'm sorry, on the state court complaint;

21   and the defendant's counsel, Mr. McCallion, actually fanned the

22   flames and actually exposed himself in the process, because he

23   gave his own statement to the press saying that the plaintiff

24   had committed a "major crime."

25             So this is not getting better; it's getting worse.

N2GVINTC

```
1          The state allegations, we amended our pleading to wrap
2    those in, as well as some additional social media, at least as
3    of the time of the amendment.  Because we were clear about this
4    in the pleading, even though it's somewhat, I think, unusual.
5    But we cited case law to show that there is law in New York
6    that when you, as we describe it, kind of litter a pleading
7    with defamatory statements that are not in service of the
8    claims being asserted and are basically a sham, those are not
9    protected.  Those are actionable.
10          And so here, that's exactly what was done.  There were
11   a number of allegations put into the state pleading which were
12   obviously designed to magnetize the press, and they did
13   magnetize the press, but they are not protected.  So that's
14   another part of our case.
15          THE COURT:  Okay.  So you have a copy right claim, a
16   libel per se claim and a breach of contract claim.  Now,
17   there's not diversity between the parties, am I right about
18   that?
19          MR. CHARRON:  Correct.
20          THE COURT:  So you're arguing that there's
21   supplemental jurisdiction because claims two and three are part
22   of the same nucleus of operative fact as the copyright
23   infringement; is that right?
24          MR. CHARRON:  Yes, your Honor.
25          THE COURT:  Okay.
```

N2GVINTC

1           All right.  So let me hear from Mr. McCallion.

2           MR. McCALLION:  Yes, your Honor.

3           We don't believe there's a need for expedited

4    discovery because the motion to dismiss that we will be filing

5    by March 3rd, we think that you will find disposes or requires

6    dismissal of the claims.

7           First of all, on the defamation claims, as your Honor

8    can plainly see from their amended pleading, they've added ten

9    paragraphs alleging, in essence, that the content of the state

10   court complaint contains defamatory statements.  They don't

11   identify which ones with any particularity, but they raise that

12   issue.  So we are going to have -- your Honor should either

13   dismiss those claims or abstain even, because we have an

14   anomalous situation of a state court judge evaluating issues

15   relating to the state court claim.

16          Meanwhile, the plaintiff here in federal court is

17   claiming that the heart of their defamation claim is in the

18   state court pleadings.  I think your Honor will come to the

19   conclusion that these issues can only be tried in one forum,

20   and the earlier forum was the state court complaint.

21          Now, with regard to the copyright claims, these are

22   really an afterthought, strictly for purposes of manufacturing

23   jurisdiction in federal court to avoid the New York anti-SLAPP.

24   Now, why do I say that?  Because plaintiff's counsel being a

25   distinguished intellectual property firm, sent a cease and

N2GVINTC

1   desist letter to Ms. Newman, arguing that they were -- that she

2   was defaming their client.  No mention was made of any

3   copyright infringement, nor could it have been, because at the

4   time the cease and desist letter was sent, they had not filed

5   for a copyright.

6           Now, when did they file for a copyright?  They filed

7   for a copyright on January 17 of this year.  Why is that date

8   significant?  Because the day before that we filed the state

9   court complaint, and a court reporter following these filings

10  picked it up and published something, I think it was on the

11  morning of the 17th.  They filed copyright claims with regard

12  to six photographs, without having put Ms. Newman on notice of

13  their intent to file a copyright relating to it.  Perhaps even

14  more seriously, several of these photographs include our

15  client's, Ms. Newman's, persona, and they filed a copyright

16  claim without asking her permission and she does not consent to

17  it.

18          Moreover, we believe we'll be able to show

19  conclusively that while she was employed by iBrain, that they

20  encouraged her to use these and other photographs taken inside

21  iBrain for publicity purposes.  She was their PR person, at

22  least an in-house PR person.  And why do they encourage her to

23  use their Instagram account?  Because Ms. Newman has a very

24  wide following, perhaps greater than that of iBrain on social

25  media.  She also has several celebrities who follow her on

N2GVINTC

1    Instagram.  And she used the publication on Instagram of these

2    photos and other materials relating to iBrain to attract these

3    celebrities to come to iBrain and to assist in promoting the

4    fundraising for iBrain.

5           THE COURT:  Let me just stop you for a second.  Sorry

6    to interrupt.  But why is any of that relevant?  I often get

7    copyright cases where the registration was filed just before

8    filing suit.  That's perfectly fine.  I don't know that the

9    copyright becomes invalid because she's pictured in it; nor

10   does there have to be an intent -- I don't think there's some

11   intent requirement in copyrights.

12          If she was working for iBrain and they are presumably

13   iBrain's ownership pursuant to the terms of her employment or

14   whatever, so what's the argument you're making about the

15   copyright?  Obviously I get the point that atmospherically

16   that's not what they were focused on.  They found a hook, but

17   what's wrong with that?

18          MR. McCALLION:  Well, when they filed the copyright,

19   she was not an employee; and when she was an employee, they

20   encouraged her to take the photographs, to publicize them on

21   her own accounts.

22          THE COURT:  Why does that matter?

23          MR. McCALLION:  And social media.

24          THE COURT:  What does that matter?  Isn't it still

25   their copyright?

N2GVINTC

1        MR. McCALLION:  Well, we think that is certainly

2   arguable using -- first giving her permission and then, without

3   putting her on notice, withdrawing -- well, they never put her

4   on notice that they are withdrawing permission; they sued her

5   for $2.9 million.  She did not know that they had a copyright

6   when they filed for the copyright.  We found out obviously when

7   they filed the federal court case.  So there's certainly no

8   damage --

9        THE COURT:  I don't think there's a knowledge

10  requirement for copyright infringement, is there?

11       MR. McCALLION:  Well, I'll defer to my colleague Kerry

12  Brennan on that.  I suppose not.  But certainly it goes to the

13  issue as to what the damages might be.  Ms. Newman did not use

14  it for business or publicity purposes.  And it's an *in terrorem*

15  filing by them seeking 2.9 million or so from her.  The intent

16  is to have a chilling effect on her exercise of her First

17  Amendment rights.

18       But I agree, your Honor, that we think some, if not

19  all, would be dismissed on a motion to dismiss, and certainly

20  there's no diversity.  The state court claims their challenge

21  to the complaint in state court is not properly asserted or

22  litigated in federal court on a defamation claim based upon the

23  contents of a state court filing.  So that will be the heart of

24  our motion to dismiss.

25       So with regard to this conference, we think that

N2GVINTC

1    there's no need to expedite discovery; that until the issues

2    are joined and we believe will be focused or at least granted

3    in part based on the motion to dismiss, that your Honor should

4    schedule, if necessary, a 26(f) conference after deciding the

5    motion to dismiss or answer by our client.  And we argue that

6    now there cannot be a full and complete discussion of a

7    discovery necessary in this case until your Honor decides the

8    motion to dismiss and decides what claims, if any, will survive

9    that motion.  Thank you.

10              THE COURT:  You mentioned New York anti-SLAPP law.

11   Are you suggesting that that somehow does not apply in federal

12   court?

13              MR. McCALLION:  Well, it most certainly applies in

14   state court.  The issue is evolving, and I'll defer to my

15   colleague for any further details.  But my understanding of the

16   state of law in the Second Circuit at this point is while

17   certain procedural aspects of the New York anti-SLAPP law may

18   not apply in federal court; that the substantive elements of an

19   anti-SLAPP suit better be on a public forum, an issue of public

20   interest, etc., are applicable.  There's at least one Eastern

21   District case on that.  It may well be evolving, and this case

22   might add to that case law.  So we do think it's likely -- at

23   least the current state of play is that it's both yes and no,

24   depending on whether you're looking at procedural or

25   substantive issues.

N2GVINTC

1          And counsel on the other side carefully researched

2     this and decided that they had needed to get a federal hook to

3     do an end-run around the state court filing.

4          THE COURT:  Okay.  I don't know the latest.  I've

5     certainly applied anti-SLAPP laws in defamation cases.  I can't

6     remember the name of the case, but I have definitely done it.

7     But there may have been some changes in the law since then.

8          In any event, I'm not sure any of that is relevant;

9     they are motivation for filing this case in federal court

10    versus state court.  It doesn't, I don't think, really matter.

11    If they have federal -- if I have federal jurisdiction, I have

12    it.

13         What I thought you were going to say is that the basis

14    for supplemental jurisdiction on the state court claims isn't

15    sufficiently connected to the copyright claim to warrant

16    supplemental jurisdiction.  Because the breach of contract and

17    defamation related to her specific statements are kind of

18    really very different from -- arguably different from her use

19    of the photos, which is just a kind of different kind of claim.

20         MR. McCALLION:  I forgot to say that.  Thank you, your

21    Honor.  I'm sorry, I was focusing on the unusual pleadings in

22    the amended complaint, arguing the basis for defamation, the

23    contents of the state law complaint.  Sorry, I got off on a

24    tangent, perhaps a tangential issue.

25         THE COURT:  Ms. Brennan, did you want to add anything?

N2GVINTC

```
 1    Your colleague has mentioned you a couple of times, so I don't

 2    want to go away without giving you your chance.

 3              MS. BRENNAN:  No.  The only thing I would add is that

 4    we would add to our motion to dismiss to address the

 5    anti-SLAPP, because it appears that this case, this entire

 6    federal court case, was brought to chill her free speech; and

 7    that if the case isn't dismissed, we would have an anti-SLAPP

 8    counterclaim.

 9              THE COURT:  All right.

10              So, Mr. McCallion, Ms. Brennan, you represent the

11    plaintiff -- sorry, the defendant here as the plaintiff in the

12    state court case.  What's going on with the state court case?

13    Where does that stand?

14              MR. McCALLION:  Well, at this particular point, there

15    has not been an answer for a motion.  I have to get together

16    with counsel on that issue, quite frankly, given the TRO, etc.,

17    and the activity to date in the federal case, quite frankly, we

18    have been focused on that.  But we intend to vigorously pursue

19    the state court claim.

20              However, it is very -- it is somewhat difficult to do

21    that if at the same time we're defending a defamation case

22    based on those same pleadings in federal court.  So, quite

23    frankly, we're putting our energy right now into the motion to

24    dismiss due March 3rd, so that you can decide one way or the

25    other whether we'll be litigating defamation in two forums or
```

N2GVINTC

1    in one.

2            THE COURT:  Mr. Charron, are you counsel for iBrain in

3    the state court?

4            MR. CHARRON:  Yes, your Honor.

5            THE COURT:  Okay.  Anything else you wanted to add

6    with respect to those various matters Mr. McCallion and

7    Ms. Brennan have been discussing?

8            MR. CHARRON:  William Charron.

9            I'm looking forward to opposing their motion to

10   dismiss.  I heard all of their stated grounds.  We're not

11   concerned by any of those arguments.  We think your Honor

12   picked up on all the right points there.

13           With respect to the question of supplemental

14   jurisdiction, this will become clear in the briefing as well,

15   if they end up briefing this argument.

16           But we do believe that the use of the photos here

17   are -- they arise out of the same transaction occurrence and

18   common nucleus of operative facts.  Because she is breaching

19   her contract.  As counsel said, she was their PR person; these

20   are works for hire; they are subject to her contract, which she

21   has breached; and her use of the photos relates to her contract

22   breaches.  And she's also appended the photos to the defamatory

23   post.  She was doing that liberally before the voluntary

24   preliminary injunction and, undoubtedly, would do so again.

25   And so it's all -- we believe it is all related.

N2GVINTC

1          And the last thing I would say is that there's no rule

2     that discovery should be stayed pending a motion to dismiss.

3     And again, we think this is -- we're asking the Court to please

4     put in a schedule now so we can get started, because we are not

5     going to be able to get the relief we really need completely

6     without litigating and showing our pleading is indeed

7     particularized and shows that these are specifically false

8     statements.  But we need to do that through the litigation

9     process and get this resolved.

10          MS. BRENNAN:  Your Honor, this is Kerry Brennan.  If I

11     could raise one more thing.

12          THE COURT:  Sorry, who is speaking?

13          MS. BRENNAN:  This is Kerry Brennan.  May I raise one

14     more thing?

15          THE COURT:  Yes, of course.

16          MS. BRENNAN:  One of the reasons -- one of the other

17     bases we'll be moving to dismiss is we think the Court, under

18     abstention principles, with respect to both the libel claim and

19     the breach of contract claim related to the state court

20     proceeding, that's something that this Court should abstain

21     from hearing and either dismiss or stay that.  So that is

22     something that we are going to be raising.  I think that's

23     something the Court needs to decide.

24          At this point, there's really no reason to commence

25     discovery.  Our client has agreed to cease use of the

N2GVINTC

photographs.  And counsel for the plaintiff here has not

indicated, other than supposition, as to her use of those in

the future.  If she were to use the photographs or any other

material that they believe is inappropriate in the future, they

could raise that.  But at the current time, there's no reason

to suspect that our client would do that.  So we don't see any

reason that we need to expedite discovery prior to all of the

claims being joined.

                THE COURT:  Two responses to that.

                One is apparently on February 9th, according to

Mr. Charron, your client posted again some other things that

they say constitute defamatory statements, which was even -- I

think was even after she took down the challenged copyright

post, right?

                MS. BRENNAN:  I mean, that is what he is alleging.

                THE COURT:  Right.

                The other question I have is why not start discovery?

Irrespective of the jurisdictional issues, the extension

issues, one way or another, whether it goes forward in the

context of the state court or it goes forward in the context of

this Court, seems like the discovery is going to happen one way

or another.  And I mean, I'm not -- I have no idea what the

truth of all this is.  But you all have put all this stuff in a

pleading in an employment case, and I wonder if it's fair.

It's kind of making iBrain fight with one hand behind its back

N2GVINTC

1    when it doesn't get discovery to go forward and explore those

2    claims that you had put at issue at least in the state court

3    matter.  Either Mr. McCallion or Ms. Brennan, why not start

4    discovery?  One way or another, you're going to be doing this

5    discovery, right?

6             MS. BRENNAN:  The reason I raise the abstention issue

7    is that one of the criteria under whether this Court should

8    abstain is the status of the two cases.  And I believe that the

9    reason that they went -- they asked for this expedited

10   discovery is because they are trying to get an advantage under

11   the extension principles, when they are trying to get this case

12   ahead of the state court before we file our motion to dismiss

13   in order to kind of moot that particular criteria that this

14   Court is going to have to examine as to the status of the two

15   cases.  And therefore we can't consent to that, particularly

16   with respect to the defamation claims.

17            THE COURT:  That's a clever argument.

18            Mr. Charron, do you want to respond?

19            MR. CHARRON:  William Charron.

20            So I don't believe the abstention doctrine applies

21   here.  It was sort of raised after the fact.  And it's not

22   something we had considered.

23            But, in any event, the ultimate issue is going to be

24   whether the Court -- as your Honor said, does the Court have

25   jurisdiction or not.  Your Honor has heard sort of the

N2GVINTC

1    prefatory observations by both sides on that question, and I

2    think is in a position to make -- have an initial instinct on

3    whether the Court has jurisdiction.  If the Court has

4    jurisdiction, this case should proceed, and we believe it

5    should proceed as rapidly as possible for the reasons I stated.

6    We really need it to.

7         THE COURT:  All right.  I'm going to think about this

8    one for a couple of days.  And I'm not certain yet, but you've

9    made good arguments.  And I'm going to think about this and I

10   will let you know what I'm going to do.

11        Initially I was thinking I was going to wait and take

12   a look at the motion to dismiss, which I sometimes do.  Because

13   if it's a partial motion to dismiss, other considerations, the

14   strength of the argument, sometimes I have discovery go

15   forward.

16        But to be clear, Mr. McCallion and Ms. Brennan, you're

17   not asking for a stay of discovery, are you, or are you?

18        MR. McCALLION:  Well, I guess in a sense we are

19   pending the motion to dismiss.  There's no stay of discovery on

20   the state court case, and nor would we request one.  And that

21   litigation can move forward.  There's no impediment on the

22   plaintiff -- or on the defendant in the state court case to

23   propound discovery in that particular case.  We'll move forward

24   on the defamation claims which they've asserted in the federal

25   case, but are identical presumably to their defense or

N2GVINTC

1    counterclaim in the state court case.

2          So they are certainly not fighting with one hand

3    behind their back.  They certainly have a state court forum to

4    pursue that.  They have not filed a motion or answered.  But

5    all of their discovery remedies are available in state court.

6          In part, we're respectfully requesting that the Court

7    stay discovery at least until we have an opportunity to file a

8    motion to dismiss.  We put it on a pretty tight schedule.  We

9    agreed to March the 3rd, which is not that far around the

10   corner.  And, quite frankly, we've been focusing a lot of

11   energy on coming to a stipulation on the injunctive relief

12   issue.  And we would respectfully request an opportunity to

13   focus on the motion to dismiss at this point and give your

14   Honor an opportunity, as you say, to at least take a look at

15   those issues as they are framed.

16          THE COURT:  All right.

17          Mr. Charron, anything you want to -- I don't want to

18   make you answer this question if you don't want to, but

19   anything you want to say about whether discovery will be going

20   forward in the state court matter or whether you'll be moving

21   for a stay there?

22          MR. CHARRON:  William Charron.

23          Your Honor, Mr. McCallion had agreed to a 45-day

24   period for our clients to answer, move, or otherwise respond.

25   I believe that time expires in mid March.  We do expect to move

N2GVINTC

```
1    to dismiss all of the claims in that case.  And as I have

2    already indicated and as we pleaded, the claims -- I'm sorry,

3    the allegations in that case that are defamatory against our

4    client don't actually relate to the claims that the defendant

5    has asserted in the state court action.  They are extraneous.

6    So I guess that would be my answer for now.

7                THE COURT:  Okay.

8                Final question:  Have you all talked about settlement,

9    and is there anything I can do in that regard that might be

10   helpful at this point?

11               MR. CHARRON:  William Charron.

12               No is the short answer on settlement.

13               The longer answer, I suppose, is that before any of

14   the litigation started, I had spoken with Mr. McCallion and

15   asked him whether there might be a way for the parties to come

16   together to try to resolve this when this was just at a, at

17   that point, still somewhat limited social media campaign.  And

18   there was no response to that.

19               And since that time and since the filing of this case,

20   the activities of the defendant have continued and only picked

21   up steam.  So I am pessimistic at this point that without

22   really getting into discovery, there's not going to be any real

23   movement.

24               THE COURT:  All right.

25               Mr. McCallion, Ms. Brennan?
```

N2GVINTC

1          MR. McCALLION:  Well, I think that we are pleased to

2     see that we're able to work at least on a stipulation

3     settlement of the injunctive relief issue.  I think both

4     parties, despite perhaps the atmospherics -- heated

5     atmospherics around it were able to accomplish that.  And,

6     quite frankly, we think that given the passage of time -- we

7     are not monitoring her social media, but I had thought that her

8     social media presence relating to this issue had gone

9     quiescent.

10          We'll look into this YouTube issue that Mr. Charron

11     raises, but I don't think it's necessarily a correct

12     characterization that she is intensifying her efforts.  Quite

13     frankly, I think she's gone on to do other things.  I know

14     she's working on other projects completely.  And it comes as a

15     surprise to me that she's still doing social media.

16          I will certainly look into that, but I think there

17     would be a good basis for a resolution, if, in fact, she

18     decides to move on to other public issues, which she has.  We

19     know she's working on other matters and I'm just surprised to

20     see that she's still posting anything here.

21          So I understand that will be a condition precedent of

22     a settlement.  We'll certainly look into it.  But we're not

23     really following her social media.  But we certainly will -- we

24     certainly will monitor that as closely as possible and see if

25     there's a basis for a resolution.

N2GVINTC

1          MR. CHARRON:  Your Honor, it's William Charron.

2          May I just add one more thing in response to that?

3          THE COURT:  Sure.

4          MR. CHARRON:  As we put in paragraph 69 of our amended

5  pleading, it's not only kind of a broad-based social media

6  campaign; it's a targeted campaign by the defendant over at

7  least LinkedIn to reach out unsolicited to business affiliates

8  of our client, to -- I'm quoting now, wanted to confirm you

9  are -- I think she meant partnered with the corrupt institute

10  known as iBrain.  If yes, no worries; if not, they claim you

11  are one, so I wanted to warn you.  I read your impressive

12  background.  And if you are partnered, I recommend reading the

13  truth online about them.

14          So it's both a generalized and a very specific

15  targeted campaign.  Short of the defendant very, very publicly

16  and comprehensively apologizing, recanting, I don't see how we

17  get to anything to even start a settlement discussion.

18          THE COURT:  Okay.  Well, I'll just leave that there.

19  If the parties -- if and when the parties reach a point where

20  they are interested in a settlement conference, I'd be happy,

21  of course, to refer you to Magistrate Judge Moses, who's

22  designated in this case, or to the court's mediation panel.

23  I'll assume that since we have some briefs coming in and I'll

24  be issuing an order on what to do with respect to discovery

25  shortly, that you'll at least wait until then.  But if at any

N2GVINTC

1   point if you do reach a point where that would be helpful, just

2   let me know with a letter.  I don't typically force parties

3   into settlement conferences unless both parties or all parties

4   are open to it; otherwise, it's usually a waste of time.

5            All right.  That's enough to cover today.  I'll be

6   issuing an order within the next week or so on discovery, and

7   we'll go from there.

8            Anything else for today from plaintiff's counsel?

9            MR. CHARRON:  William Charron.

10           No.  Thank you very much, your Honor.

11           THE COURT:  Thank you.

12           And from defense counsel?

13           MR. McCALLION:  No, thank you, your Honor.

14           THE COURT:  Thanks, everyone.  We are adjourned.

15           Have a good day.

16                         *    *    *

17

18

19

20

21

22

23

24

25